**Juan L. STEWARD, Plaintiff,**

v.

**NORFOLK, FRANKLIN AND DANVILLE RAILWAY COMPANY, Defendant.**

Civ. A. No. 79–728–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

March 19, 1980.

---

John M. Cloud, Norfolk, Va., for plaintiff.

William T. Prince, Norfolk, Va., for defendant.

## MEMORANDUM ORDER

KELLAM, District Judge.

Asserting in his original and amended complaints that he instituted this action pursuant to 42 U.S.C. § 2000e, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fifth and

Fourteenth Amendments of the Constitution, and that jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, plaintiff alleges that he is a Negro; that he was employed by the defendant as a brakeman, from which employment he was unlawfully discharged because of his race. He further alleges that defendant discriminates against Negroes generally. Plaintiff asserts he filed a complaint with the EEOC on or about February 25, 1977; that on May 29, 1979, the EEOC notified him of his right to bring a private suit against defendant.

The parties have completed discovery, and defendant has filed a motion for summary judgment. Plaintiff has submitted his affidavit in opposition.

### I

Plaintiff was employed as a brakeman with defendant on September 3, 1975. He was discharged on April 4, 1977. The stated reason for his discharge was that plaintiff "failed to list two prior employments on his employment application." [Stipulation in Final Pretrial Order]. The record before the EEOC and other correspondence have been filed as agreed exhibits. Plaintiff was hired to augment the Extra Board of defendant, as he did not have sufficient seniority to hold a regular position. These men are worked on a first-in terminal first-out basis, plaintiff being called when needed. In October 1975, pursuant to labor agreement, the local chairman of the United Transportation Union requested the Extra Board be cut to four men. Two white brakemen and plaintiff were furloughed. In December 1976 plaintiff was advised he stood again for the Extra Board and would be expected to report for duty in 15 days. In early 1977, plaintiff complained of lack of work and threatened various actions against the Company. Prompted by the constant complaints, defendant made an examination of plaintiff's employment application. The application listed one previous employment from March 25 to July 26, 1975, with Norfolk Naval Shipyard. He set forth as the reason for leaving that employment, "my 700 hours was up." [See application]. A check of plaintiff's prior employment established he had been employed by Suffolk City Fire Department [1] and Suffolk Chemical Company,[2] from each of which employments he had been discharged. In keeping with its procedure, defendant notified plaintiff in writing that a formal investigation would be held March 29, 1977, to determine plaintiff's responsibility for misstatements in his application. Plaintiff appeared and said he was ready to proceed, although he had no witnesses or a representative present. He denied he was discharged from the Fire Department, saying he resigned. He offered no reasonable explanation as to why he failed to list these employments in his application.

The application signed by plaintiff was certified by him as true and correct. The certification set forth that he understood "that any falsification, misrepresentation or significant omission will constitute just cause for dismissal, regardless of when discovered." [Application]. Plaintiff was discharged. Although plaintiff asserts his discharge was because of race, in September 1972, a white male was dismissed for failure to furnish information on his application. [Affidavit of Superintendent of Railroad].

Under date of February 24, 1977,[3] plaintiff sent a letter to EEOC. His complaint was over the fact he was not drawing enough money. By letter of March 14, 1977, the Director of the Washington District Office acknowledged receipt of the above letter, and advised plaintiff the EEOC administers Title VII of the Civil Rights Act; that it was authorized to accept complaints, attempt conciliation, as long as the complaint was filed within 180 days, and if he wished to file a formal

---

1. The investigation established that while employed by the Fire Department, plaintiff walked off the job and did not return. He was then discharged.

2. He was discharged because his work was unsatisfactory and for falsifying his application. He filed EEOC complaint in this case.

3. Plaintiff was not discharged until April 4, 1977.

complaint, to complete the form enclosed. By letter of June 8, 1977, the same Director acknowledged receipt of the form dated February 25, 1977, and advised that because of a backlog there would be a delay in the investigation. In the form complaint he said he was being discriminated against. Though it is difficult to determine really what he complained of, it seems he complained of working conditions, failure to repair or furnish him with proper equipment, "refuse to give me active notice and proper training and rights," "unconstitutional wage and hour." On January 11, 1979, the EEOC advised plaintiff that his original charge against defendant would have to be amended to include his unlawful discharge which plaintiff had referred to in a telephone conversation of November 11, 1978. A form for his use was enclosed in that letter. The new or amended complaint was dated January 15, 1979. There he said he was terminated because of his having filed a complaint with the EEOC. EEOC says it mailed the charges to the Railroad January 19, 1979. By letter of February 20, 1979, the defendant responded saying the charges were received January 24, 1979; that they were based on an event which occurred April 4, 1977, almost two years earlier, and the charges were not timely.

The EEOC file also contains a copy of a letter from EEOC to Congressman Daniel, who had made inquiry of the status of the claims on behalf of plaintiff, which letter advises that regarding a claim of discrimination filed by plaintiff against the Virginia State Highway Department, the Commission, after investigation, "found no reasonable cause to believe that the law we enforce had been violated;" that the second charge was filed against the Suffolk Fire Department, and that plaintiff was issued a right to sue; and that EEOC expected to issue its findings in the Railroad case in the near future. Under date of May 29, 1979, the EEOC said examination of the evidence in the record indicated there "is no reasonable cause to believe that this allegation is true." A right to sue form was sent with the determination. The original complaint was filed in this Court August 9, 1979.

Defendant has raised the issue of the statute of limitations, denied any act of discrimination, and has moved for summary judgment.

II

The issue for determination by the Court is whether there is any showing of discrimination against plaintiff because of his race. Whether there has been any breach of a contract of employment or an unlawful discharge for reasons other than race is not before the Court. In fact, the Court would have no jurisdiction of such a claim because of lack of diversity.

The Court will deal first with the specific causes of action.

A.

It seems clear that if plaintiff had any cause of action under 42 U.S.C. §§ 1981 and 1983, it is time-barred. The alleged act of discrimination occurred on April 4, 1977, the date of the discharge, or earlier. This action was not filed until August 9, 1979. No limit upon the time to bring an action for any wrong covered by that statute was provided by Congress and such "silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitations." Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743; Runyon v. McCrary, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976); Johnson v. Railway Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The statute of Virginia, Virginia Code § 8.01–243, formerly § 8–24. Hence the two year statute governs this case. Runyon v. McCrary, supra; Johnson v. Railway Express Agency, supra; Almond v. Kent, 459 F.2d 200 (4th Cir. 1972); Revere v. Tidewater Telephone Co., 6 FEP Cases 890, 6 EPD § 8,888 (D.C.Va.1973), aff'd 485 F.2d 684 (4th Cir. 1973); Allen v. Gifford, 462 F.2d 615 (4th Cir. 1973); Burke v. Miller, 580 F.2d 108 (4th Cir. 1978), separate opinion of J. Winter.

### B.

■ There is another reason why the 1983 claim must be dismissed. The language of the statute is plain that the alleged act or acts of discrimination must be "under color of any statute, ordinance, regulation, custom or usage of any State or Territory . . . ." 42 U.S.C. § 1983. State action is therefore necessary, and plaintiff must allege and "show that the defendant acted 'under color of law.'" *Adickes v. Kress and Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). *See also Rodgers v. Tolson*, 582 F.2d 315, 318 (4th Cir. 1978). Not only is there a failure to allege any state action, the record is clear that none is proven or even suggested.

### C.

■ Nothing is offered or suggested to show the statute of limitations was tolled. The mere filing of a claim under 42 U.S.C. § 2000e, even when timely filed, does not toll the running of the statute for any cause of action under 42 U.S.C. §§ 1981 and 1983. *Johnson v. Railway Express Agency, supra.*

### D.

■ Plaintiff has failed to offer any evidence or state of facts to show he has a right to maintain this action under 28 U.S.C. § 2201, the declaratory judgment statute. Though he attempts to say he has a cause of action under that statute, the statute creates no cause of action. It grants a remedy. The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights" in conformity with the principles of equity. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943).

■ There are no facts in the record upon which plaintiff could establish any right to recover under the Fifth or Fourteenth Amendments. Since the decision of the Supreme Court in "the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). For, "[T]hat amendment erects no shield against mere private conduct, however discriminatory or wrong." Id. "The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." *Loving v. Commonwealth of Virginia*, 388 U.S. 1, 10, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967). *See also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477. And as the Court again pointed out, the "central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," and the "Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976).

"The Fifth Amendment contains no equal protection clause and it restrains only such discriminatory legislation by Congress as amounts to a denial of due process." *Kiyoshi Hirabayashi v. United States*, 320 U.S. 81, 100, 63 S.Ct. 1375, 1385, 87 L.Ed. 1774 (1943).

### E.

■ Turning lastly to the asserted claim under Title VII, 42 U.S.C. § 2000e, defendant says that the first claim of discrimination relative to the discharge was made to investigator McCurty on November 11, 1978. The formal charge was filed January 15, 1979. Defendant says this charge was not filed within 180 days after the unlawful discharge of April 4, 1977, and it is therefore barred. *Bledsoe v. Pilot Life Insurance Co., Inc.*, 602 F.2d 652 (4th Cir. 1979). Plaintiff makes no contention that he filed his claim of unlawful discharge with the EEOC prior to January 15, 1979, which is

more than 180 days from the date of the last act of discrimination; namely, the date that he was discharged.[4]

The Supreme Court made it clear in *United Airlines v. Evans*, 431 U.S. 553, 555, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977) that a person must initiate proceedings "by filing a charge with the EEOC within 90 (by the 1972 Amendment 180) days of his separation," and that when not so filed, a "claim based on that discriminatory act is therefore barred." The requirement of the aforementioned statutory service is not merely a limitation but goes to the jurisdiction of the court. "Congress did express concern for the need of time limitations in the fair operation of the Act, but that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged violator." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 371, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402 (1971). In the last cited case, the Court pointed out that Congress' preception was reflected in the final version of the 1972 Act "which requires that a charge must be filed with the EEOC within 180 days of the alleged violation of Title VII." The same position has been made clear by the Fourth Circuit in *King v. Seaboard Coast Line Railroad Co.*, 538 F.2d 581, 583 (1976) where the Court said that a claim for a discharge racially motivated "would be barred for failure to file a timely charge with the EEOC in connection therewith." Again, in *Williams v. Norfolk & W. Ry. Co.*, 530 F.2d 539, 541 (4th Cir. 1975), the Court said:

> Title VII charges must be filed within 180 days after the occurrence of the alleged unlawful employment practice, and an award of back pay is restricted to the two years preceding the charge. 42 U.S.C. § 2000–5(e) and (g).

*See also Hoover v. Opportunities Indus., etc.*, 348 F.Supp. 657, 659 (D.C.Va.1972).

In this case the plaintiff was discharged from his employment April 4, 1977. He did not work for the defendant after that date. The "termination of employment puts at rest the employment discrimination because the discharged individual is no longer an employee." *Greene v. Carter Carburetor Co.*, 532 F.2d 125 (8th Cir. 1976). *See also Williams v. Norfolk & W. Ry. Co.,* supra.

"A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *United Airlines, Inc. v. Evans, supra.*

Plaintiff may not, in view of the language in the *United Airlines* case, successfully assert the alleged discrimination was a continuing act, or that the complaint filed in 1979 relates back. That was the plaintiff's contention in *United Airlines*, namely, that United was "guilty of a present, continuing violation [5] of Title VII and therefore that her claim (is) was timely." [431 U.S. 557, 97 S.Ct. 1888]. The Court said that plaintiff was correct in pointing out the company's seniority system gave present effect to a past act of discrimination, but that United was "entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 (180) days then allowed by § 706(d)" [Id. 431 U.S. 558, 97 S.Ct. 1889]. The timely filing is a prerequisite to maintenance of a Title VII action. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147. *See* footnote 4 of *United Airlines* case.

But even if the complaint filed in January 1979 relates back, the record fails to disclose any evidence to establish that plaintiff was discriminated against because of his race. He was discharged for failure to disclose two prior employments. The uncontradicted evidence in the record shows whites were treated the same way. The record establishes the discharge was because of a failure to list former employ-

---

4. 42 U.S.C. § 2000e–5(e) provides "a charge under this section shall be filed within 180 days after the alleged unlawful employment practice occurred . . . ."

5. There plaintiff sought to link two alleged acts of discrimination.

ment. No evidence contradicts this, save the conclusion or opinion of plaintiff, which is not evidence.

While plaintiff sought to allege defendant discriminated against Negroes in its hiring and promotion practices, no attempt was made to have this action certified as a class action, and plaintiff did not show he was affected by any such policy. He therefore has no standing to maintain an action on this issue. He has no personal stake in the outcome of such an issue, and has shown no injury to himself that is likely to be redressed. See *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Schlesinger v. Reserve Committee*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1977).

There being no genuine issue of fact for decision, the motion for summary judgment is GRANTED and this action is DISMISSED.